**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| GYMBOREE GROUP, INC., *et al.*, [1] | ) )  Case No. 19-30258 (KLP) |
| Debtors. | ) )  (Jointly Administered) ) |

**SCHEDULE OF ASSETS AND LIABILITIES FOR**
**GYMBOREE HOLDING CORPORATION**
**CASE NO. 19-30257 (KLP)**

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Gymboree Group, Inc. (6587); Gymboree Intermediate Corporation (1473); Gymboree Holding Corporation (0315); Gymboree Wholesale, Inc. (6588); Gym-Mark, Inc. (6459); Gymboree Operations, Inc. (6463); Gymboree Distribution, Inc. (8669); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC (6461); Gym-Card, LLC (5720); and Gymboree Island, LLC (1215).  The Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GYMBOREE GROUP, INC., *et al.*,[1] | ) | Case No. 19-30258 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODS, AND**
**DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND**
**LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

**General**

The Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") filed by Gymboree Group Inc. ("Gymboree" or the "Company") and its debtor affiliates, as chapter 11 debtors in possession (collectively the "Debtors") pending in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") were prepared, pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure, by management of the Debtors, with the assistance of the Debtors' advisors, and are unaudited.

While the Debtors' management has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors, inaccuracies, or omissions may have occurred. Because the Schedules and Statements contain unaudited information, which is subject to further review, verification, and potential adjustment, there can be no assurance that these Schedules and Statements are complete. The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to claim (as defined in section 101(5) of the Bankruptcy Code, "Claim") description, designation, or Debtor against which the Claim is asserted; dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and Statements as to amount, liability,

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Gymboree Group, Inc. (6587); Gymboree Intermediate Corporation (1473); Gymboree Holding Corporation (0315); Gymboree Wholesale, Inc. (6588); Gym-Mark, Inc. (6459); Gymboree Operations, Inc. (6463); Gymboree Distribution, Inc. (8669); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC (6461); Gym-Card, LLC (5720); and Gymboree Island, LLC (1215). The Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

priority, status, or classification; subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or object to the extent, validity, enforceability, priority, or avoidability of any Claim. Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated." Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed or against any of the Debtors. Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtors or an admission with respect to their chapter 11 cases (including, but not limited to, issues involving claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers).

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist.

The Debtors and their agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized. In no event will the Debtors or their agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Jon W. Kimmins, Chief Financial Officer, and authorized agent at each of the Debtors. Accordingly, in reviewing and signing the Schedules and Statements, Mr. Kimmins necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals. Mr. Kimmins has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments. In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

These Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules and Statements (the "Global Notes") are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2]

## Global Notes and Overview of Methodology

### Description of the Cases and Information Date

On January 16, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The chapter 11 cases are being jointly administered under Case No. 19-30258 (KLP) pursuant to an order entered on January 17, 2019 [Docket No. 60]. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The asset information provided herein, except as otherwise noted, represents the asset data of the Debtors as of January 5, 2019, the date of the Debtors' month end closure to their balance sheet prior to the Petition Date, and the liability data of the Debtors as of the close of business on the Petition Date.

On June 12, 2017, The Gymboree Corp. and several of its affiliates commenced chapter 11 cases (the "Prior Cases") before the Court, which were jointly administered under the caption *In re The Gymboree Corp.*, No. 17-32986 (KLP). A plan of reorganization was confirmed in the Prior Cases on September 7, 2017, and such plan went effective on September 29, 2017. On January 19, 2018, all of the Prior Cases, other than the case of The Gymboree Corporation, were closed. Unless otherwise specified in the Schedules, Statements or Specific Notes, the responses contained in the Schedules and Statements only relate to the period since the Debtors' emergence from the Prior Cases. Although the Debtors in these cases are distinct from the debtors in the Prior Cases and the Debtors do not express any views with respect to the reliability or accuracy of information contained in the Schedules and Statements filed by the debtors in the Prior Cases, such Schedules and Statements may provide similar information relevant to the Debtors for earlier periods of time.

### Basis of Presentation

For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements that were consolidated by Debtor Gymboree Holding Corporation. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("GAAP"). Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements reflect the

---

[2] These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

assets and liabilities of each separate Debtor, except where otherwise indicated. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

**Amendment of Schedules and Statements**

While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate.

<u>**General Disclosures Applicable to Schedules and Statements**</u>

1.      **Causes of Action**.  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "<u>Causes of Action</u>") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

2.      **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. However, the Debtors may have improperly characterized, classified, categorized, designated or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

3.      **Claim Designations**.  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."  Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate.  Listing a claim does not constitute an admission of liability by the Debtors.

4.      **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

5.      **Undetermined Amounts**.  The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

6.      **Court Orders**.  Pursuant to certain orders of the Bankruptcy Court entered in the Debtors' chapter 11 cases entered on or about January 17, 2019, January 18, 2019 and February 15, 2019 (collectively, the "First Day Orders"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, critical service providers, lienholders, exporters, importers, customer credits/refunds, and taxing authorities.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore may not be listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements to reflect such payment as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

7.      **Other Paid Claims**.  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

8.      **Valuation**.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets.  Accordingly, unless otherwise indicated, net book values as of January 5, 2019 are reflected on the Schedules and Statements.  Exceptions to this include operating cash and certain other assets.  Operating cash is presented at bank balance as of the Petition Date.  Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values.  Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material.  Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items

identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements. Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be an admission that any Debtor was solvent or insolvent as of the Petition Date.

9. **Liabilities**. The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend the Schedules and Statements as they deem appropriate in this regard.

10. **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, certain intercompany transactions, accrued salaries, certain employee benefit accruals and accrued accounts payable. In addition and as set forth above, the Debtors have excluded certain amounts for which the Debtors have been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court. The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist or may exist. Also, certain immaterial assets and liabilities may have been excluded.

11. **Confidential or Sensitive Information**. There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual. The alterations will be limited to only what is necessary to protect the Debtor or third party.

12. **Leases**. The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases. To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule F of the Schedules.

13. **Contingent Assets**. The Debtors believe that they may possess certain claims and causes of action against various parties. Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws. The Debtors, despite reasonable efforts, may not have set forth all of their causes of action against third parties as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.

The Debtors may also possess contingent and unliquidated claims against affiliate Debtor entities for various financial accommodations and similar benefits they have extended from time to time, including contingent and unliquidated claims for contribution, reimbursement, and/or indemnification arising from, among other things, (i) letters of credit, (ii) notes payable and receivable, (iii) surety bonds, (iv) guarantees, (v) indemnities, and (vi) warranties.  Additionally, prior to the relevant Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.  Refer to each Statement, item 4(a)(i), for lawsuits commenced prior to the relevant Petition Date in which the Debtor was a plaintiff.

14.    **Receivables and Payables**.  The Debtors have not listed individual customer accounts receivable balance information as the Company considers its customer list to be proprietary and confidential.

15.    **Intercompany Accounts**.  The Debtors record intercompany assets and liabilities through intercompany trade (includes trade and other business-related transactions) accounts, where they are reflected as receivables and payables.  Intercompany trade accounts record sales-type transactions between Gymboree's subsidiaries and affiliates.  The Debtors have eliminated intra-company activity within each legal entity, and intercompany balances are reported in the Schedules on a net basis.  For additional information regarding the Debtors' intercompany transactions and related cash management protocols, see *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Maintain Existing Bank Accounts, and (C) Perform Intercompany Transactions, (II) Granting a Waiver of (A) the Requirements of Section 345(b) of the Bankruptcy Code and (B) Certain of the U.S. Trustee's Operating Guidelines, (III) Scheduling a Hearing to Consider Entry of a Final Order, and (IV) Granting Related Relief* [Docket No. 10] (the "Cash Management Motion").

16.    **Guarantees and Other Secondary Liability Claims**.  The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements.  Where such Guarantees have been identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees.  However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.  Thus, the Debtors reserve all of their rights to amend the Schedules to the extent that additional Guarantees are identified.

17.    **Intellectual Property Rights**.  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in

fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

18.    **Executory Contracts**. Although the debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

19.    **Liens**. The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment.

20.    **Estimates**. To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities. The Debtors reserve all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

21.    **Fiscal Year**. Effective July 13, 2017, the Debtors' predecessors in interest elected to change their fiscal year to begin and end on the Saturday closest to the end of January. The Debtors' Fiscal Year 2017 was only for the period beginning September 29, 2017, the date they came into existence and emerged from their predecessors' chapter 11 cases, and ending February 3, 2018. The Debtors' Fiscal Year 2018 was for the 12-month period beginning February 4, 2018 and ending February 2, 2019.

22.    **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

23.    **Property and Equipment**. Unless otherwise indicated, owned property and equipment are stated at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third party lessors. Any such leases are set forth in the Schedules and Statements. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

24.    **Inventory**. Merchandise inventories are recorded at cost, determined on a weighted-average basis. The Debtors record an inventory shrink adjustment based upon physical counts and also provide for estimated shrink adjustments for the period between the last physical inventory count and each balance sheet date. The inventory shrink estimate can be affected by changes in merchandise mix and changes in actual shrink trends.

25.    **Claims of Third-Party Related Entities**. While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

26.     **Interest in Subsidiaries and Affiliates**.  Debtor Gymboree Holding Corporation is a holding company with Debtor Gymboree Intermediate Corporation being a wholly-owned direct subsidiary.  In turn, Gymboree Group, Inc. is a wholly-owned direct subsidiary of Gymboree Intermediate Corporation.  With the exception of Gym-Card, LLC, which is the wholly-owned direct subsidiary of Gymboree Retail Stores, LLC, each of the other seven Debtors are wholly-owned direct subsidiaries of Gymboree Group, Inc.  Each Debtor's Schedule A/B15 or Statement 25 contains a listing of the current capital structure of the Debtors and includes ownership interests.

27.     **Umbrella or Master Agreements**.  Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.

28.     **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

29.     **Setoffs**.  The Debtors incur certain setoffs and other similar rights during the ordinary course of business.  Offsets in the ordinary course can result from various items, including, without limitation, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their suppliers.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

30.     **Insiders**.  For purposes of the Schedules and Statements, the Debtors define "insiders" to include the following:  (a) directors; (b) officers; (c) shareholders holding in excess of 20% of the voting shares of one of the Debtor entities (whether directly or indirectly); (d) relatives of directors, officers or shareholders of the Debtors (to the extent known by the Debtors); and (e) Debtor/non-Debtor affiliates.

Persons listed as "insiders" have been included for informational purposes only.  The Debtors do not take any position with respect to:  (a) such person's influence over the control of the Debtors; (b) the management responsibilities or functions of such individual; (c) the decision making or corporate authority of such individual; or (d) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose.

31.     **Controlling Shareholders**.  For purposes of the Schedules and Statements, the Debtors define "controlling shareholders" to include entities that directly hold in excess of 20% of the voting shares of the applicable Debtor entity.  Entities listed as "controlling shareholders" have been included for informational purposes only.  The Debtors do not take any position with respect

to such entity's influence over the control of the Debtors or whether such entity could successfully argue that it is not a "controlling shareholder" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose.

32.     **Payments**.  The financial affairs and business of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System") (as described in the Cash Management Motion).  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

33.     **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

**General Notes Regarding Schedule A/B**

The Debtors transfer funds among Debtors and non-debtor entities in the ordinary course of business as trade. Intercompany transfers are not reported by the Debtors as accounts receivable, so do not appear in Schedules A/B. Any intercompany debts are recorded on Schedules E/F.

**Specific Notes Regarding Schedule A/B**

1.    Schedule A/B-6 – Deposits and Prepayments. Deposit amounts are as of the Petition Date and do not reflect any modifications made by the Debtors after the Petition Date or any applications made by certain utilities after the Petition Date to pay for services provided by them before the Petition Date.

2.    Schedule A/B-8 –Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent. The Debtors have categorized their various prepayments by type, and have employed the catch-all category titled "Prepaid Other" for any prepayments that do not fit neatly under any other category. The types of prepayments categorized as "Prepaid Other" include certain advances made under service agreements and professional fees.

3.    Schedule A/B-15 – Stock and interests in incorporated and unincorporated businesses. See Schedule Exhibit A/B-15 for additional businesses the Debtor was a parent of or owned a significant interest in.

4.    Schedule A/B-21 – Inventory, excluding agricultural assets. With respect to inventory obsolescence reserves, the Company reserves 25% for any merchandise older than one year. Furthermore, a lower cost of market reserve is calculated based on GAAP.

5.    Schedules A/B-39, -40, -41, -43, -44, and -50 – Office and Business Equipment. Certain of the Debtors' office and business equipment, fixtures, machinery, furnishings, and supplies are not capitalized based on its accounting policies and procedures. The Debtors generally capitalize an asset if it has a life of more than 1 year and if it meets a certain dollar threshold in accordance with the Debtors' accounting policy. There may be certain assets that are not capitalized because they did not meet the Debtors' capitalization policy. Those assets that are not capitalized are not listed herein.

6.    Schedule A/B-63 – Customer lists, mailing lists, or other compilations. The Debtor operates three retail store locations in Puerto Rico. The Schedule includes the value allocated to the customer list associated with each store.

7.    Schedule A/B-65 – Goodwill. The Debtors implemented a series of organizational changes as part of the plan of reorganization confirmed during the Prior Cases, and in connection therewith the Debtors undertook a fair valuation of their assets and liabilities that resulted in the creation of goodwill accounts for many of the Debtors upon their emergence from the Prior Cases.

8.    Schedule A/B-72 – Tax refunds and unused net operating losses (NOLs). The Debtors' Schedule A/B may include certain tax refunds and unused state net operating losses ("NOLs") as set forth therein that have accrued and are available to offset future tax liabilities in

11

certain circumstances.  Schedule A/B reflects the balance of the amount of a Debtor's NOLs as of February 3, 2018, and does not reflect any NOLs that such Debtor may accrue in the future, including for the fiscal year ended February 2, 2019.

**Specific Notes Regarding Schedule D**

Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Court, the Debtors reserve their rights to dispute or challenge validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim. Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not nor shall it be deemed an admission as to the validity of any such lien. Conversely, the Debtors made reasonable, good faith efforts to include all liens on Schedule D, but may have inadvertently omitted to include an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation. Moreover, the Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights. Although there are multiple parties that may hold a portion of, or a beneficial interest in, the debt included in the Debtors' prepetition secured credit facility and secured loan, only the administrative agents have been listed for purposes of Schedule D. The amounts listed as outstanding under the Debtors' prepetition loan facilities reflect approximate amounts as of the Petition Date.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of Stephen Coulombe, Chief Restructuring Officer of Gymboree Group, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 11].

In Schedule D, the Debtors' prepetition loans are listed at their full principal amount plus accrued interest as of the Petition Date. Schedule E/F does not include a potential deficiency claim that may result from a partial recovery.

Although the Debtors in these cases are distinct from the debtors in the Prior Cases, the Debtors have attempted to include all creditors from the Prior Cases in the Schedules and Statements of the Debtors.  Accordingly, the Debtors have listed and carried forward any claims that would have been included in the Schedule of a debtor from the Prior Cases in the Schedule of the applicable Debtor in these cases.

**Specific Notes Regarding Schedule E/F**

1.      Creditors Holding Priority Unsecured Claims. The listing of any claim on Schedule E/F does not constitute an admission by the Debtors that such claim is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve all of their rights to dispute the amount and/or the priority status of any claim on any basis at any time.

Schedule E/F for certain Debtors includes claims of former employees, including claims for accrued and unpaid flexible time off.  As reflected in the Debtors' Schedule E/F, the Debtors are not able to determine the portion of claims for flexible time off owed to former employees that is entitled to priority treatment under section 507 of the Bankruptcy Code.

Certain of the claims listed on the Debtors' Schedule E/F are claims owing to various governmental and taxing authorities to which the Debtors may potentially be liable. However, certain of such claims may be subject to on-going audits and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as unknown in amount, pending final resolution of on-going audits or other outstanding issues.

2.      Creditors Holding Nonpriority Unsecured Claims. The Debtors have used their reasonable best efforts to list all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records.

Schedule E/F does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date. Schedule E/F does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date; such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F. Schedule E/F contains information regarding potential and pending litigation involving the Debtors. In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined. To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease.

In addition, Schedule E/F does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Except in certain limited circumstances, the Debtors have not scheduled contingent and unliquidated liabilities related to guaranty obligations on Schedule E/F. Such guaranties are, instead, listed on Schedule H.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors.

The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

Unless the Debtors were required to pay ancillary costs, such as freight, miscellaneous fees and taxes, such costs are not included in the liabilities scheduled, as such amounts do not represent actual liabilities of the Debtor.

3.      Schedule – Intercompany. The Debtors maintain business relationships among each other and with their foreign subsidiary based in Canada (the "Foreign Subsidiary") resulting in intercompany receivables and payables in the ordinary course of business. Such Intercompany Claims arise (a) among the Debtors and (b) between the Debtors and the Foreign Subsidiary pursuant to prepetition shared services and intercompany trade arrangements, and other intercompany arrangements. The respective intercompany accounts payable and accounts receivable are listed at the net amount due to/due from the Debtor as of January 15, 2019 on Schedule E/F for each Debtor.  Intercompany liabilities listed on the Schedules do not reflect any entries made during the fiscal year close period that relate to charges incurred before the Petition Date.

4.      Schedule – Merchant Trade Payables. The Merchant Trade Payables listed on Schedule E/F contain the pre-petition liability information available to the Debtors as of the date of filing and do not include invoices that were paid subsequent to the Petition Date related to prepetition obligations per the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Services Providers and (II) Granting Related Relief* (the "Critical Services Providers Order") [Docket No. 379].

Furthermore, as part of the relief granted in Critical Services Providers Order, the Debtors will continue to make payments towards outstanding prepetition obligations to certain service providers, and the amounts scheduled are subject to change as future payments are made towards the underlying obligations.

5.      Schedule –Other Trade Payables. The Other Trade Payables listed on Schedule E/F contain the pre-petition liability information available to the Debtors as of the date of filing and do not include invoices that were paid subsequent to the Petition Date related to prepetition obligations per the: *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Services Providers and (II) Granting Related Relief* (the "Critical Services Providers Order") [Docket No. 379] and *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims*

*of Shippers, Warehousemen and Contractors and Import/Export Charges, and (II) Granting Related Relief* [Docket No. 380].

**Specific Notes Regarding Schedule G**

1.     **Executory Contracts**.  While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts at each of the Debtors, and although commercially reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or over inclusions may have occurred.  The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary.  The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents.  Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument or other document is listed thereon.

In some cases, the same supplier or provider may appear multiple times on Schedule G. This multiple listing, if applicable, is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items which, to the extent that such purchase orders constitute executory contracts, are not listed individually on Schedule G. To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category.  In those instances, one category has been chosen to avoid duplication.  Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and atonement agreements, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements.  Such documents also are not set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the

17

characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary. Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance. In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month to month basis. To the extent such contracts or agreements constitute executory contracts, these contracts and agreements are not listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute; executory agreements that are oral in nature have not been included in Schedule G.

In the ordinary course of business, the Debtors may have entered into confidentiality agreements which, to the extent that such confidentiality agreements constitute executory contracts, are not listed individually on Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors.

The Debtors generally have not included on Schedule G any insurance policies, the premiums for which have been prepaid. The Debtors submit that prepaid insurance policies are not executory contracts pursuant to section 365 of the Bankruptcy Code because no further payment or other material performance is required by the Debtors. Nonetheless, the Debtors recognize that in order to enjoy the benefits of continued coverage for certain claims under these policies, the Debtors may have to comply with certain non-monetary obligations, such as the provision of notice of claims and cooperation with insurers. In the event that the Bankruptcy Court were to ever determine that any such prepaid insurance policies are executory contracts, the Debtors reserve all of their rights to amend Schedule G to include such policies, as appropriate.

In addition, Schedule G does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The

Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

Certain of the agreements listed on Schedule G may have been entered into by or on behalf of more than one of the Debtors.  Additionally, the specific Debtor obligor(s) to certain of the agreements could not be specifically ascertained in every circumstance.  In such cases, the Debtors have made reasonable efforts to identify the correct Debtors' Schedule G on which to list the agreement and, where a contract party remained uncertain, such agreements may have been listed on a different Debtor's Schedule G.

**Specific Notes Regarding Schedule H**

Co-Debtors.  In the ordinary course of their business, the Debtors pay certain expenses on behalf of their subsidiaries. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary course of business transactions.

These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are contingent, disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H.

However, some such claims may be listed elsewhere in the Schedules and Statements.

**General Notes Regarding Statements of Financial Affairs**

1.      SOFA Part 1, Questions 1 and 2 - Gross Revenue from Business and Non-Business Revenue. The Debtors' Fiscal Year 2017 was for the 4-month period beginning September 29, 2017 and ending February 3, 2018. The Debtors' current fiscal year is for the 12-month period ending February 2, 2019.

The Debtors report revenue on a cash basis for the period beginning September 2017, when the Debtors reorganized and established their current entity structure. Please refer to the SOFA Part 1, Question 1 from the Statements filed in the Prior Cases for revenue detail prior to September 2017.

2.      SOFA Part 2, Question 3 – Payments or transfers made to creditors within 90 days preceding commencement of this case. All disbursements are reported on a cash basis.

3.      SOFA Part 3, Question 7 – Legal actions, administrative proceedings, etc. to which the debtor is or was a party within one year of commencement of this case. An action may have been commenced against multiple Debtors. Only the Debtor named in a given case title is the Debtor for which such case is listed.

Any action commenced by or against The Gymboree Corporation has been assumed to be pending in the name of Debtor Gymboree Group, Inc., and any action commenced by or against Gymboree Retail Stores, Inc. has been assumed to be pending in the name of Debtor Gymboree Retail Stores, LLC.

4.      SOFA Part 6, Question 13 – Property transferred outside ordinary course of business within 2 years preceding commencement of this case. On July 15, 2016, the Debtors' predecessors in interest consummated a transaction (the "Play & Music Transaction") to sell all the equity of affiliate Gymboree Play Programs, Inc. ("GPPI"), together with assignments and licenses to certain intellectual property used in connection with the Gymboree Play & Music business, to Zeavion, a Singapore-based investment group. Upon closing the Play & Music Transaction, Zeavion acquired the entire Gymboree Play & Music enterprise, including its central operations and centers in North America.

As part of the plan of reorganization confirmed in the Prior Cases that became effective in September 2017, Debtor Gymboree Group, Inc. purchased substantially all of the assets of The Gymboree Corporation, including its subsidiaries. Please refer to the organization documents and asset purchase agreement filed in connection with such plan in the Prior Cases for additional details regarding this transaction.

5.      SOFA Part 13, Question 17 – This does not include any welfare benefit or severance plan subject to ERISA, and includes only tax-qualified plans subject to ERISA.

6.      SOFA Part 10, Question 20 – Off-premises storage, used within 1 year preceding commencement of this case. As of the Petition Date, approximately 140 shipping containers of the Debtors' merchandise were being held by United States Customs and Border Protection due to certain vendors not submitting or providing the agency with appropriate paperwork. The Debtors

expect that the vast majority, if not all, of such containers have been released since the Petition Date.

7.      SOFA Part 13, Question 25 – Other businesses in which the Debtor has or has had an interest.  The Debtors reorganized pursuant to a chapter 11 plan of reorganization that became effective in the Prior Cases in September 2017.  Please refer to the SOFAs filed in connection with the Prior Cases for a more detailed history of interest by entity.

8.      SOFA Part 13, Question 26a – Bookkeepers and accountants used within 2 years of commencement of this case. Deloitte LLP performed certain services for the Debtors in fiscal year 2018, but was not officially engaged at the time such services were rendered.

9.      SOFA Part 13, Question 26d – Creditors and other parties to whom a financial statement was issued within 2 years preceding commencement of this case. The Debtors routinely provide financial statements to banks, customers, suppliers, tax authorities, landlords, factors, potential investors, and other financial institutions in the ordinary course, as well as in association with its debt restructuring efforts.

10.     SOFA Part 13, Question 28 – Current Officers, Directors, Managing Members, Controlling Shareholders, etc. The Debtors' officers and directors do not currently hold any shares in the Debtors, but the company has a management incentive plan.

11.     SOFA Part 13, Question 30 – Payments, distributions, or withdrawals credited to an insider within 1 year preceding commencement of this case.  Payments listed in these Statements exclude any health and dental benefits provided, and any employer taxes paid, by the Debtors.

12.     SOFA Part 13, Question 31 – Tax Consolidation Group, parent corporation of any tax consolidation group of which debtor has been a member during the 6 years preceding commencement of this case.  In certain states, the Debtors may also file group returns in which certain entities are named rather than Gymboree Holding Corp, according to state laws (for example, "Gymboree Retail Stores, LLC, et al.").

**Fill in this information to identify the case:**

Debtor name   **Gymboree Holding Corporation**

United States Bankruptcy Court for the:   EASTERN DISTRICT OF VIRGINIA

Case number (if known)   **19-30257**

☐ Check if this is an
amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

| Part 1: | Summary of Assets |
|---|---|

1.    *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*....................................................................................    $ _____ **0.00**

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*.................................................................................    $ _____ **78,572,857.00**

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*..................................................................................    $ _____ **78,572,857.00**

| Part 2: | Summary of Liabilities |
|---|---|

2.    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*....................................    $ _____ **0.00**

3.    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*...............................................    $ _____ **0.00**

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................    +$ _____ **0.00**

4.    **Total liabilities** ....................................................................................................
   Lines 2 + 3a + 3b    $ _____ **0.00**

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Gymboree Holding Corporation** |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF VIRGINIA |
| Case number (if known) | **19-30257** |

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property      12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☑ No.  Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

☑ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

☑ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

☐ No.  Go to Part 5.
☑ Yes Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14.    **Mutual funds or publicly traded stocks not included in Part 1**
Name of fund or stock:

15.    **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

| | Name of entity: | % of ownership | | |
|---|---|---|---|---|
| 15.1. | **Common Stock of Gymboree Intermediate Corporation** | 100 % | **Unknown** | **Unknown** |

| Debtor | **Gymboree Holding Corporation** | Case number *(If known)* **19-30257** |
|---|---|---|
| | Name | |

16.    **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
Describe:

17.    **Total of Part 4.**
| | $0.00 |
|---|---|

Add lines 14 through 16.  Copy the total to line 83.

**Part 5:**    **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:**    **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

**Part 8:**    **Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

**Part 9:**    **Real property**

54. **Does the debtor own or lease any real property?**

■ No.  Go to Part 10.
☐ Yes Fill in the information below.

**Part 10:**    **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

**Part 11:**    **All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

**Current value of debtor's interest**

71.    **Notes receivable**
Description (include name of obligor)

| Debtor | **Gymboree Holding Corporation** | Case number *(If known)* **19-30257** |
|--------|----------------------------------|----------------------------------------|
|        | Name                             |                                        |

| 72. | Tax refunds and unused net operating losses (NOLs) | | |
|-----|-----------------------------------------------------|---|---|
|     | Description (for example, federal, state, local) | | |
|     | **See Attached Schedule A/B: Part 11, Question 72** | Tax year **2018** | **$78,572,857.00** |

73.  **Interests in insurance policies or annuities**

74.  **Causes of action against third parties (whether or not a lawsuit has been filed)**

75.  **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76.  **Trusts, equitable or future interests in property**

77.  **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

78.  **Total of Part 11.**

     Add lines 71 through 77. Copy the total to line 90.

     | **$78,572,857.00** |
     |---------------------|

79.  **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

     ■ No
     ☐ Yes

| Debtor | **Gymboree Holding Corporation** | Case number *(If known)* **19-30257** |
|---|---|---|
| | Name | |

<div style="background:black;color:white;display:inline-block">Part 12:</div> **Summary**

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*.......................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $78,572,857.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $78,572,857.00 | + 91b.    $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $78,572,857.00 |

Intra-Cymbonee Holding Corporation
Case No. 19-30257

Schedule A/B: Part 11, Question 72: Tax refunds and unused net operating losses (NOLs)

| Description | Tax Year | Current Value of Debtor's Interest | Description |
|---|---|---|---|
| UNUSED NOL | FY 2017 [2/3/2018] | $107,576 | AK |
| UNUSED NOL | FY 2017 [2/3/2018] | $273,656 | AZ |
| UNUSED NOL | FY 2017 [2/3/2018] | $349,942 | CT |
| UNUSED NOL | FY 2017 [2/3/2018] | $14,284 | DC |
| UNUSED NOL | FY 2017 [2/3/2018] | $69,143,470.00 | FEDERAL |
| UNUSED NOL | FY 2017 [2/3/2018] | $69,542 | ID |
| UNUSED NOL | FY 2017 [2/3/2018] | $2,200,782 | IL |
| UNUSED NOL | FY 2017 [2/3/2018] | $330,826 | KS |
| UNUSED NOL | FY 2017 [2/3/2018] | $629,657 | MA |
| UNUSED NOL | FY 2017 [2/3/2018] | $61,879 | ME |
| UNUSED NOL | FY 2017 [2/3/2018] | $500,812 | MI |
| UNUSED NOL | FY 2017 [2/3/2018] | $260,400 | MN |
| UNUSED NOL | FY 2017 [2/3/2018] | $67,047 | MT |
| UNUSED NOL | FY 2017 [2/3/2018] | $3,119 | MULTNOMAH |
| UNUSED NOL | FY 2017 [2/3/2018] | $505,703 | NC |
| UNUSED NOL | FY 2017 [2/3/2018] | $20,946 | ND |
| UNUSED NOL | FY 2017 [2/3/2018] | $302,641 | NE |
| UNUSED NOL | FY 2017 [2/3/2018] | $157,415 | NH |
| UNUSED NOL | FY 2017 [2/3/2018] | $139,532 | NM |
| UNUSED NOL | FY 2017 [2/3/2018] | $976,413 | NY |
| UNUSED NOL | FY 2017 [2/3/2018] | $113,757 | NYC |
| UNUSED NOL | FY 2017 [2/3/2018] | $1,144,497 | OR |
| UNUSED NOL | FY 2017 [2/3/2018] | $35,648 | RI |
| UNUSED NOL | FY 2017 [2/3/2018] | $726,797 | UT |
| UNUSED NOL | FY 2017 [2/3/2018] | $17,723 | VT |
| UNUSED NOL | FY 2017 [2/3/2018] | $254,396 | WI |
| UNUSED NOL | FY 2017 [2/3/2018] | $164,397 | WV |
| | TOTAL: | $78,572,857 | |

1 of 1

**Fill in this information to identify the case:**

Debtor name       **Gymboree Holding Corporation**

United States Bankruptcy Court for the:    EASTERN DISTRICT OF VIRGINIA

Case number (if known)    **19-30257**

☐ Check if this is an
amended filing

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

■ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Fill in this information to identify the case:**

Debtor name  **Gymboree Holding Corporation**

United States Bankruptcy Court for the:   EASTERN DISTRICT OF VIRGINIA

Case number (if known)   **19-30257**

☐ Check if this is an
  amended filing

## Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

■ No. Go to Part 2.

☐ Yes. Go to line 2.

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
    out and attach the Additional Page of Part 2.

| | |
|---|---|
| 3.1 | **Nonpriority creditor's name and mailing address** |

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent

☐ Unliquidated

**Date or dates debt was incurred** ____          ☐ Disputed

**Last 4 digits of account number** ____

**Basis for the claim:** _____

Is the claim subject to offset?  ☐ No  ☐ Yes

### Part 3:    List Others to Be Notified About Unsecured Claims

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies,
   assignees of claims listed above, and attorneys for unsecured creditors.

   If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| | | |

### Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. $ | 0.00 |
| **5b. Total claims from Part 2** | 5b.  + $ | 0.00 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. $ | 0.00 |

**Fill in this information to identify the case:**

Debtor name    **Gymboree Holding Corporation**

United States Bankruptcy Court for the:    EASTERN DISTRICT OF VIRGINIA

Case number (if known)    **19-30257**

☐ Check if this is an
amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**
     ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
     ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| **2.1.**    State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | **See Attached Schedule G** |

In re Gymboree Holding Corporation
Case No. 19-30257
Schedule G: Executory Contracts and Unexpired Leases

| Contract Counterparty | Address | Description of Contract or Lease and Nature of Debtor's Interest | Date of Contract or Lease | Remaining Term | List Contract Number of Any Government Contract |
|---|---|---|---|---|---|
| ANDREW NORTH | 1010 WILSHIRE BLVD. #709 LOS ANGELES CA 90017 | EMPLOYMENT AGREEMENT | 8/13/2015 | | |
| ANDREW NORTH | 1010 WILSHIRE BLVD. #709 LOS ANGELES CA 90017 | EMPLOYMENT AGREEMENT | | | |
| DANIEL J. GRIESEMER | 145 MONARCH BAY DR DANA POINT CA 92629 | EMPLOYMENT AGREEMENT | | | |
| DANIEL O'SHAUGHNESSY | 239 BRANNAN ST. UNIT 5G SAN FRANCISCO CA 94107 | EMPLOYMENT AGREEMENT | | | |
| DANIEL O'SHAUGHNESSY | 239 BRANNAN ST. UNIT 5G SAN FRANCISCO CA 94107 | EMPLOYMENT AGREEMENT | 4/13/2016 | | |
| DANIEL O'SHAUGHNESSY | 239 BRANNAN ST. UNIT 5G SAN FRANCISCO CA 94107 | EMPLOYMENT AGREEMENT | 5/1/2016 | | |
| JESSICA ROSS | 222 BROADWAY #907 OAKLAND CA 94607 | EMPLOYMENT AGREEMENT | | | |
| JESSICA ROSS | 222 BROADWAY #907 OAKLAND CA 94607 | EMPLOYMENT AGREEMENT | 8/10/2015 | | |
| KIMBERLY HOLTZ MACMILLAN | 624 CALLIPPE COURT BRISBANE CA 94005 | EMPLOYMENT AGREEMENT | 7/14/2015 | | |
| KIMBERLY HOLTZ MACMILLAN | 1795 YORKTOWN ROAD SAN MATEO CA 94402 | EMPLOYMENT AGREEMENT | | | |

**Fill in this information to identify the case:**

Debtor name **Gymboree Holding Corporation**

United States Bankruptcy Court for the: EASTERN DISTRICT OF VIRGINIA

Case number (if known) **19-30257**

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 **See Attached Schedule H** | | | ☐ D _____<br>☐ E/F _____<br>☐ G _____ |

In re Gymboree Holding Corporation
Case No. 19-30257
Schedule H:  Codebtors

| Name of Codebtor | Address | Name of Creditor | Applicable Schedules (D, E/F, G) |
|---|---|---|---|
| Gymboree Group, Inc. | 71 STEVENSON STREET STE. 2200, 415-278-7000, SAN FRANCISCO, CA 94105 | ACFO CREDIT CORPORATION | G |
| Gymboree Group, Inc. | 71 STEVENSON STREET STE. 2200, 415-278-7000, SAN FRANCISCO, CA 94105 | FIRST INSURANCE FUNDING | G |

1 of 1

Fill in this information to identify the case:

Debtor name **Gymboree Holding Corporation**

United States Bankruptcy Court for the:   EASTERN DISTRICT OF VIRGINIA

Case number (if known)   **19-30257**

☐ Check if this is an
amended filing

Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☑  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☑  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☑  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☑  *Schedule H: Codebtors* (Official Form 206H)
☑  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐  Amended *Schedule* _____
☐  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐  Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **March 1, 2019**          X **/s/ Jon W. Kimmins**
                                            Signature of individual signing on behalf of debtor

                                            **Jon W. Kimmins**
                                            Printed name

                                            **Authorized Signatory**
                                            Position or relationship to debtor